# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA BOOZE,      :  CIVIL NO. 1:12-CV-1307
             :
    Plaintiff,     :
             :  (Judge Kane)
v.            :
             :
JOHN WETZEL, *et al*.,    :
             :  (Magistrate Judge Schwab)
    Defendants.   :

## REPORT AND RECOMMENDATION

In this prisoner civil rights action, the defendants have filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I recommend that the motion be granted.

## I. Background and Procedural History.

On July 9, 2012, the *pro se* plaintiff, Joshua Booze ("Booze"), an inmate currently imprisoned at the State Correctional Institution at Coal Township ("SCI Coal Township"), initiated this action by filing a complaint against the following 17 defendants: (1) John Wetzel ("Wetzel"), the Secretary of Corrections for the Pennsylvania Department of Corrections ("DOC"); (2) M. Cloptoski ("Cloptoski"), the Eastern Regional Superintendent for the DOC; (3) Dorina Varner ("Varner"), the former Chief Grievance Officer for the DOC; (4) Tracy Williams ("Williams"), the current Chief Grievance Officer for the DOC; (5) Jon Fisher ("Fisher"), the Superintendent at the State Correctional Institution at Smithfield ("SCI

Smithfield"); (6) Whitesel, the Deputy Superintendent for Facility Management at SCI Smithfield; (7) Lisa Hollibaugh ("Hollibaugh"), a grievance coordinator at SCI Smithfield; (8) Robinson, a Major at SCI Smithfield; (9) Meyers, the Security Captain at SCI Smithfield; (10) F.C. Schoop, a Lieutenant at SCI Smithfield; (11) Goss, a Lieutenant at SCI Smithfield; (12) Workinger, the Property Sergeant at SCI Smithfield; (13) R.S. Irvin, a corrections officer at SCI Smithfield; (14) Symons, a Lieutenant at SCI Coal Township; (15) Romig, the Property Sergeant at SCI Coal Township; (16) Segetti, a corrections officer at SCI Coal Township; and (17) Baker, a corrections officer at SCI Coal Township. *Doc.* 1 ¶¶ 5-21. Along with his complaint, Booze filed a motion to proceed *in forma pauperis*, which was granted on July 16, 2012. *Docs.* 2 & 8. In his complaint, Booze alleges the following.[1]

On April 7, 2011, Booze claims that he was transferred from SCI Fayette to SCI Smithfield. *Doc.* 1 at ¶ 26. Two weeks later, according to Booze, he filed a request slip with Fisher seeking a "'legal exemption' which is an extra box for legal materials in a prisoner's cell for any active legal case or appeal." *Id.* at ¶ 27. Booze alleges that, at the time, he had a petition for post-conviction relief ("PCRA") pending in Pennsylvania's state court system. *Id.* Booze's request,

---

[1] These factual allegations are supplied only to provide background. I pass no judgment on their veracity.

however, was allegedly denied "as retaliation," because he had filed a grievance against a corrections officer for taking one of his affidavits that he planned on using in support of his PCRA petition. *Id.* at ¶¶ 28, 32.

On May 26, 2011, after returning from a PCRA hearing, Booze was purportedly assigned to the Restricted Housing Unit ("RHU") pending a transfer to SCI Coal Township. *Id.* at ¶¶ 29-30. While in the RHU, Booze claims that $15.86 was deducted from his prisoner's account in order to have his "extra legal box" sent from SCI Fayette to SCI Smithfield. *Id.* at ¶ 31. The legal box allegedly contained affidavits, trial transcripts, trial notes, and correspondence with his criminal defense counsel. *Id.* at ¶ 38. Upon being charged that dollar amount, Booze alleges that he filed another request slip with Fisher, seeking to obtain a legal exemption, but that request was also denied. *Id.* at ¶¶ 32-33. Upon denying his second request for a legal exemption, Fisher allegedly told Booze to contact Hollinbaugh. *Id.* at ¶ 33. Booze claims that he contacted Hollinbaugh, but he never received a response. *Id.* Subsequently, in mid-June 2011, Booze's legal box arrived from SCI Fayette. *Id.* at ¶ 34. Booze claims that he never had an opportunity to review the materials, though. *Id.* Moreover, he claims that he was forced to proceed on his PCRA petition without any of his legal materials (i.e. exhibits). *Id.*

On June 25, 2011, according to Booze, Irvin gave him a confiscation of items receipt, informing him that his legal box from SCI Fayette had been confiscated pending approval of legal exempt status by Fisher. *Id.* at ¶ 35. Then, two weeks later, Booze claims that he was transferred to SCI Coal Township. *Id.* at ¶ 36. According to Booze, he was transferred "in retaliation for filing grievances," and he was unable to inventory any of his property before being transferred. *Id.*

Upon arriving at SCI Coal Township, Booze purportedly wrote a request slip to Romig seeking to resolve the issues relating to his missing / confiscated personal property. *Id.* at ¶ 37. Booze also allegedly filed a grievance, because he was not given his legal box when his personal property was given back to him. *Id.* at ¶¶ 37, 39. Accordingly, Booze did not sign any inventory sheets. *Id.* Subsequently, on August 1 and 3, 2011, Booze alleges that he wrote additional request slips to Romig seeking to obtain his legal box. *Id.* at ¶ 38. As well, Booze filed a grievance with officials at SCI Smithfield in an attempt to obtain his legal box that was allegedly taken by Irvin. *Id.* at ¶ 40.

On August 29, 2011, Schoop denied Booze's grievance that was filed at SCI Smithfield, declaring that Booze's property had already been shipped and nothing remained behind. *Id.* at ¶ 42. On September 9, 2011, Booze filed a grievance appeal to Fisher about his legal box and complained about retaliation by DOC staff

members. *Id.* at ¶ 43. In his grievance appeal, Booze also allegedly informed Fisher about his pending, *pro se*, PCRA petition. *Id.* On September 30, 2011, Fisher denied Booze's grievance appeal. *Id.* at ¶ 44. Fifteen days later, Booze continued his pursuit of an administrative grievance by appealing Fisher's decision to Varner, explaining to her that the PCRA court had denied his PCRA petition for his inability to supply certain exhibits and affidavits that were purportedly with his missing / confiscated legal materials. *See id.* at ¶ 45. As well, Booze claims that he informed Varner that he had to now file a federal habeas corpus petition. *Id.* However, on December 15, 2011, Williams allegedly signed off for Varner denying Booze's appeal. *Id.* at ¶ 46. According to Booze, Williams subjected him to "deliberate indifference" by stating that it was possible that he failed to check his boxes upon being transferred. *See id.* at ¶ 46; *see also Doc.* 1 at 32 [Exh. 14]. Booze also alleges that Williams covered up for other DOC employees, "which is willful misconduct and further violated [his] due process rights." *Doc.* 1 at ¶ 46.

On January 4, 2012, after his grievance had been fully appealed and his PCRA petition had been adversely decided, Hollinbaugh allegedly wrote Booze a letter stating that his legal box was being held in the property room at SCI Smithfield after all. *See id.* at ¶ 47. Towards the end of the month, Booze claims that a dollar amount was deducted from his prisoner's account and that the dollar amount, determined by the weight of item shipped, reflected that some of his legal

materials had been removed at SCI Smithfield. *Id.* at ¶ 48. Moreover, according to Booze, when Romig and Segetti opened his legal box, in his presence, there was no name written on the box to indicate who had originally closed it. *Id.* at ¶ 49. Booze alleges that the absence of a written name on the box violated DOC policy. *Id.* In addition, upon opening the box, Booze alleges that it did not contain an inventory sheet, trial transcripts, trial notes, or correspondence with his defense counsel.[2] *Id.* at ¶ 50. As a result, on January 28, 2012, Booze filed another grievance against officials at SCI Smithfield concerning his legal materials. *Id.* at ¶ 51.

On February 6, 2012, Schoop denied Booze's grievance, stating that Goss had checked the property room and found nothing with Booze's name on it. *Id.* at ¶ 53. In denying Booze's grievance, Schoop admitted that the legal box was not inventoried, but had contained a confiscation slip. *Id.* After his grievance was denied, Booze proceeded to appeal. *Id.* at ¶¶ 54, 57. During the administrative grievance appeal process, Booze claims that he learned about another confiscation slip regarding an affidavit purportedly taken by Allison and Myers; the same affidavit he had planned on using in support of his PCRA petition. *See id.* at ¶¶ 28, 56. On April 5, 2012, Fisher denied Booze's initial grievance appeal stating that

---

[2] While Booze alleges that these items were missing, he also claims at the end of this paragraph that "all related materials and studies were present." *Doc.* 1 at ¶ 50. It is unclear what exactly he means.

"the staff did not take anything…other than that was taken on April 8, 2011." *Id.* at ¶ 57. Booze, however, claims that Fisher's response was malicious in that the date Fisher referred to in his response did not correlate to the date written on a separate confiscation slip that was signed by Irvin. *See id.* at ¶ 58. After Fisher denied Booze's initial grievance appeal, Booze proceeded to the final grievance appeal stage to Varner. *Id.* at ¶ 59. Booze attached the confiscation slip signed by Irvin to his final appeal, and he allegedly informed Varner that due to the confiscation of his legal materials, he could no longer file a federal habeas corpus petition because the statute of limitations had lapsed. *See id.* Booze alleges that Varner knew that the actions by corrections officers at SCI Smithfield violated his due process rights and access to the courts by affecting his PCRA petition and any further collateral relief. *Id.* at ¶ 59. Nevertheless, according to Booze, Varner denied his final appeal and did not acknowledge the confiscation slip signed by Irvin. *Id.* at ¶ 61. Booze claims that Varner's response amounts to arbitrary and willful misconduct and malice. *Id.*

Based on these allegations, Booze raises claims for retaliation, violation of due process, denial of access to the courts, willful misconduct, criminal coercion, discrimination, "deliberate indifference," negligence, emotional distress, and violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Additionally, Booze specifically prays for a declaratory

judgment, injunctive relief, compensatory damages in the amount of $200,000, and punitive damages.[3]  *Doc.* 1 at 11.

After waiving service of process (*Doc.* 13), the defendants moved to dismiss Booze's complaint for failure to state a claim.  *Doc.* 16.  On October 4, 2012, Chief Magistrate Judge Carlson granted the defendants' request for an extension of time to file a brief in support.  *Doc.* 20.  Thereafter, on October 17, 2012, the defendants filed a timely brief.  *Doc.* 21.  Subsequently, on November 7, 2012, after receiving his own time extension, Booze filed a brief in opposition to the defendants' motion.[4]  *Docs.* 24 & 25.  The defendants did not file a reply brief and their time for doing so has since expired, yet, the motion, having been addressed by the parties, is ripe for disposition on the merits.

---

[3]  Among the relief that he seeks, Booze prays for declaratory relief enabling him to proceed with a new PCRA petition and, presumably, a habeas corpus petition under 28 U.S.C. § 2254.  *Doc.* 1 at 11.  I note for his benefit that is not the type of relief that this Court may or will grant.  First, it would violate fundamental notions of federalism for this Court to require the courts of the Commonwealth to allow Booze to proceed with a new PCRA petition upon any potential finding that certain governmental actors interfered with his ability to bring or support his action for post-conviction relief.  Second, while I pass no judgment on the validity of any potential claim or argument that he might have, the federal habeas corpus statute involves its own unique set of procedural and substantive guidelines that must be satisfied in order to bring a petition in federal court and to qualify for relief.

[4]  In Booze's brief in opposition, he requests that Symons, Baker, Romig, and Segetti (the "SCI Coal Township defendants") be dismissed as defendants.  *Doc.* 25 at 8.  Booze admits that the SCI Coal Township defendants did not violate any of his rights, as expressed herein.  *Id.*; *see also Doc.* 1 at ¶¶ 71, 73.  Therefore, I recommend that the SCI Coal Township defendants be dismissed as defendants, with prejudice.

## II.     Legal Standard – Rule 12(b)(6).

The defendants have moved to dismiss Booze's complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint

should be dismissed for "failure to state a claim upon which relief can be granted."

Fed.R.Civ.P. 12(b)(6).  The Third Circuit recently noted this evolving benchmark

standard for legal sufficiency of a complaint stating that:

> Standards of pleading have been in the forefront of jurisprudence
> in recent years. Beginning with the Supreme Court's opinion in
> *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167
> L.Ed.2d 929 (2007) continuing with our opinion in *Philips* [*v.
> County of Allegheny*, 515 F.3d 224, 230 (3rd Cir.2008) ] and
> culminating recently with the Supreme Court's decision in
> *Ashcroft v. Iqbal*[, 556 U.S. 662], 129 S.Ct. 1937, 173 L.Ed.2d
> 868 (2009) pleading standards have seemingly shifted from
> simple notice pleading to a more heightened form of pleading,
> requiring a plaintiff to plead more than the possibility of relief to
> survive a motion to dismiss.

*Fowler v. UMPC Shadyside*, 578 F.3d 203, 209–10 (3rd Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief

can be granted, the court must accept as true all allegations in the complaint, and

all reasonable inferences that can be drawn therefrom are to be construed in the

light most favorable to the plaintiff.  *Jordan v. Fox Rothschild, O'Brien & Frankel*,

*Inc.*, 20 F.3d 1250, 1261 (3rd Cir. 1994).  A court, however, "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to

dismiss."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3rd Cir. 1997).

Further, a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Supreme Court has stated that in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court in *Twombly* also stressed that the allegations and the supporting facts must raise a right to relief to something higher than a speculative level. *Id.* More recently, the Supreme Court refined these pleading requirements stating that the pleaded facts must amount to more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, when reviewing pleadings for sufficiency, the Supreme Court advises trial courts to:

> Begin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must-be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

As such, following *Twombly* and *Iqbal* a well-pleaded complaint must contain more than mere legal labels and conclusions and raise the plaintiff's claimed right to relief beyond the level of mere speculation. The Third Circuit advised that:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler*, 578 F.3d at 210–11.

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed

right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Applying these guiding principles, I find that the allegations set forth in Booze's complaint are insufficient to state a claim upon which the relief requested can be granted under 42 U.S.C. § 1983. Therefore, the defendants' motion to dismiss should be granted, and, in addition, the Court should decline to exercise its supplemental jurisdiction over Booze's state law claims sounding in torts.

## III. <u>Discussion.</u>

### A. Eleventh Amendment Sovereign Immunity.

Before proceeding to Booze's particularized claims, I must first address a jurisdictional issue. The defendants assert that the Eleventh Amendment bars Booze's damages claims against them in their official capacities. Under the Eleventh Amendment to the United States Constitution, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. Amend. XI. In addition, Eleventh Amendment sovereign immunity protects unconsenting states and state agencies from suit brought in federal court brought against them by their *own* citizens. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir.

2009).  When lawsuits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361 (1991). Thus, unless the state consents, Eleventh Amendment sovereign immunity bars suits against a state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 104 S.Ct. 900, 908-09 (1984). This is true regardless of whether suit is brought under federal law, *see Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252, 265 (1996), or state law.  *Pennhurst, supra*, 465 U.S. at 117, 104 S.Ct. at 917, 79 L.Ed.2d at 89.  Moreover, where sovereign immunity applies, a federal court is stripped of subject matter jurisdiction.  *See Johnson v. U.S. Attorneys*, CIV. A. 10-1643, 2010 WL 2991409, at *2-*3 (E.D.Pa. July 27, 2010).  Accordingly, I agree with defendants that the Eleventh Amendment bars Booze's damages claims against them in their official capacities.

Booze argues against Eleventh Amendment immunity, however, by relying on waivers of governmental and official immunities, under state law, for state-law claims.  *See, e.g.*, *Doc.* 25 at 14 (referring to 42 Pa.C.S. §§ 8541; 8542(a)). But, such waivers are irrelevant to the Eleventh Amendment issue, and Pennsylvania has in fact refused to waive its sovereign immunity under the Eleventh Amendment.  42 Pa. C.S. §§ 8521(b); 8522.  Furthermore, waiver of Eleventh Amendment sovereign immunity generally requires a clear declaration to that

effect.  *A.W. v. Jersey City Public Schools*, 341 F.3d 234, 240 (3d Cir. 2003).  The claims against all the defendants in their official capacities should therefore be dismissed as the Court lacks subject matter jurisdiction over them.

### B. Personal Involvement.

To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003).  The doctrine of *respondeat superior* does not apply to constitutional claims.  *See Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Rather, each defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim.  *Iqbal, supra*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Argueta v. United States ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (same).  Personal involvement may be shown

through allegations of actual involvement in, personal direction of, or knowledge of and acquiescence to the asserted civil rights violations. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Id.* at 1208. "In order to satisfy the 'personal involvement' requirement, a complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck*, 326 F. App'x 97, 101 (3d Cir. 2009) (per curiam).

Here, aside from naming Wetzel, Cloptoski, Whitesel, and Robinson in his complaint, Booze makes no allegations concerning their personal involvement in the underlying events. Additionally, inmates do not have a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 137–138 (1977); *Speight v. Sims*, No. 08–2038, 2008 WL 2600723 at *1 (3d Cir. Jun 30, 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")). Thus, any attempt by Booze to establish liability against Hollinbaugh, Varner, and Williams, based solely upon the substance of their respective responses, or lack thereof, to his grievances or administrative appeals, does not

support a constitutional due process claim.[5]  *See also Alexander v. Gennarini*, 144

F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process

not a basis for § 1983 liability); *Pryor–El v. Kelly*, 892 F.Supp. 261, 275 (D.D.C.

1995) (because prison grievance procedure does not confer any substantive

constitutional rights upon prison inmates, the prison officials' failure to comply

with grievance procedure is not actionable).

### C. Retaliation Claims.

In his complaint, Booze raises the following retaliation claims: (1) Fisher

denied him a "legal exemption" in retaliation for having filed a grievance against

another corrections officer (*Doc.* 1 at ¶ 28); (2) Irvin deprived him of his legal

materials in retaliation for having filed a grievance against other DOC employees

(*Doc.* 1 at ¶ 63); (3) Meyers denied him his legal materials in retaliation for filing a

grievance against him (i.e. Meyers) (*Doc.* 1 at ¶ 64); (4) Schoop participated in

confiscating his legal materials by "making a mistake on what date the legal

material was confiscated" (*Doc.* 1 at ¶ 57); (5) he was transferred to SCI Coal

Township in retaliation for filing grievances (*Doc.* 1 at ¶ 36); and (6) "[d]ue to

---

[5]      Booze argues that Varner also acted with deliberate indifference and
responded to his grievances with malice and willful misconduct.  *See Doc.* 25 at 8-
9.  His characterization of her responses, however, is nothing more than a display
of dissatisfaction with the substance of her decisions.  In addition, as the
defendants point out, these particular allegations in his complaint are stated in a
pure conclusory fashion and should be outright dismissed.

defendants' actions [he] suffered a great loss of his due process rights … because of … retaliation…." (*Doc.* 1 at ¶ 72).

To properly allege a claim for retaliation, Booze must establish that he (1) engaged in constitutionally protected conduct, (2) prison officials took adverse action against him sufficient to "deter a person of ordinary firmness from exercising his constitutional rights," *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000); and (3) the "the constitutionally protected conduct was a 'substantial or motivating factor' in the decision to discipline" the inmate. *Rauser v. Horn*, 241 F.3d 330, 333–334 (3d Cir. 2001) (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) (noting that the third factor requires the demonstration of a "causal link between constitutionally protected action and the adverse action taken against him").

First, "[t]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity." *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373–84 (1981)). Thus, if Booze's allegations are true, he engaged in constitutionally protected conduct prior to the alleged retaliatory conduct.  As well, taking his allegations as true, Booze alleges that legal documents were taken from him and

that he was transferred to SCI Coal Township. Booze fails to plead causation, however.

A plaintiff "may demonstrate causation through a 'pattern of antagonism' following the plaintiff's protected conduct or unusually suggestive temporal proximity" between the protected and retaliatory conduct. *Motto v. Wal–Mart Stores East, LP*, No. 11–2357, 2013 WL 1874953, at *8 (E.D.Pa. May 13, 2013) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997)). A plaintiff must also properly "allege a chronology of events from which retaliation may be inferred." *Bendy v. Ocean Cnty. Jail*, 341 F. App'x 799, 802 (E.D. Pa. 2009) (citations and internal quotations omitted).

Here, Booze does not allege that any of the defendants other than Meyers had any knowledge of his previously filed grievances. Booze also fails to allege sufficient facts to establish a "pattern of antagonism." Likewise, he cannot rely on an "unusually suggestive temporal proximity" to support his claims of retaliation against the defendants because he does not allege when he filed the grievances that were purportedly used to retaliate against him. *See Mearin v. Swartz*, No. 11–669, 2013 WL 2641801, at *9 (E.D.Pa. June 12, 2013) (dismissing plaintiff's retaliation claim where "he [did] not allege when [his] suit was filed, that Defendants were aware that the suit had been filed or any other facts that would indicate that Defendants' actions were precipitated by the filing of that suit"). Therefore, absent

any allegations to demonstrating causation, I recommend dismissing Booze's retaliation claims.

### D. Access-to-Court Claims.

Under the First and Fourteenth Amendments, prisoners retain a right of meaningful access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). "However unsettled the basis of the constitutional right of access to courts, [these types of] cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Accordingly, to state an access-to-the-courts claim, a plaintiff must "allege actual injury, such as the loss or rejection of a legal claim," *Oliver v. Fauver*, 118 F.3d 175, 177 (3d Cir. 1997), as well as show that they have no other remedy that may be awarded as recompense for the lost claim(s) other than in the present denial of access suit, *Harbury*, 536 U.S. at 415. Thus, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation," and the claim must be described well enough to apply the non-frivolous test and to show that the "arguable" nature of the underlying claim is premised on more than mere hope. *Harbury*, 536 U.S. at 415-16. Last, prisoners may only proceed on

access-to-courts claims in two types of cases, (1) challenges (direct or collateral) to their sentences and (2) conditions of confinement. *See Lewis*, 518 U.S. at 354-55.

Here, Booze raises access-to-courts claims against the defendants alleging that they frustrated his ability to supplement his PCRA petition and, later, file a federal habeas corpus petition. Booze, though, fails to allege facts demonstrating that his supplemental PCRA grounds or federal habeas grounds were nonfrivolous or arguable. As well, he fails to demonstrate how the lack of any affidavits, exhibits, or transcripts hampered his ability to collaterally attack his conviction and sentence. Instead, Booze's claims are loosely based on the mere hope that use of such documents would have changed the outcome of his collateral appeals. Given these deficiencies, Booze's access-to-courts claims should be dismissed.

**E. Due Process Claims.**

Generally, in his complaint, Booze claims that the defendants violated his Fifth and Fourteenth Amendment right to due process by depriving him of his legal materials. As an initial matter, Booze's Fifth Amendment deprivation of property claim is wholly meritless, because the Fifth Amendment only applies to actions of (or by) the Federal Government. *Colon-Martinez v. Pennsylvania Healthcare Service Staffs*, No. 13-2040, 2013 WL 3481811, at *2 (3d Cir. June 27, 2013)(citing *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n. 11 (2005)); *see also Rauso v. Zimmerman*, No. 3:97-CV-1841, 2006 WL 3717785, at *1 n. 7

(M.D. Pa. Dec. 14, 2006). In this case, Booze's claims are asserted solely against state actors and he has not alleged that any of the defendants were acting under the authority of the federal government. Further, Booze's Fourteenth Amendment claim lacks merit.

The Fourteenth Amendment provides, in pertinent part, that no state shall "deprive any person of … property, without due process of law…." U.S. CONST. Amend. XIV, § 1. In *Parratt v. Taylor*, the Supreme Court held that the Fourteenth Amendment's Due Process Clause is not violated when a state employee negligently deprives an individual of property, provided that the state makes available a meaningful post-deprivation remedy. 451 U.S. 527 (1981). The Court reasoned, "where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur." *Palmer v. Hudson*, 468 U.S. 517, 532 (1984)(citing *Parratt*, 451 U.S. at 541). Given the Court's rationale, it would later find no logical distinction between negligent and intentional deprivations of property given that intentional deprivations are even more difficult to anticipate. Accordingly, when the issue was revisited, the Court extended its holding in *Parratt* to intentional deprivations of property by state employees, so long as a meaningful post-deprivation remedy is available. *Id.* at 533. Adequate post-deprivation remedies include the ability to file a state tort action or use of the

prison's grievance process. *See Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010).

Here, regardless of whether Booze's allegations are in fact true, namely his allegations that his legal materials were either negligently or intentionally confiscated or lost, he had an adequate post-deprivation remedy available. DC-ADM 804, which is a policy enacted by the Pennsylvania Department of Corrections, permits prisoners to seek redress for grievances such as the confiscation of personal property. Further, the Third Circuit has held that the Department of Correction's grievance procedure pursuant to DC–ADM 804 provides an adequate post-deprivation remedy which forecloses any due process claim, *see McEachin v. Beard*, 319 F.Supp.2d 510, 514–15 (E.D. Pa. 2004) (citing *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)). Additionally, even though Booze has presented allegations indicating his dissatisfaction with the grievance procedure process, and the responses he received, that alone is insufficient because "the [mere] failure of prison officials to follow DOC policy does not, in and of itself, result in a violation of due process." *See, Bohm v. Straw*, No. 12-16J, 2013 WL 100441, at *9 (W.D. Pa. Jan. 8, 2013)(Lenihan, Mag.J.)(quoting *Tarselli v. Harkleroad*, No. 10-1266, 2012 WL 603219 (Feb. 23, 2012)). Instead, Booze must plead that the procedure was no

longer meaningful through the defendants' actions. Booze's claims, therefore, should be dismissed.

### F. Leave to Amend.[6]

The Third Circuit has taken a liberal approach to granting leave to amend pleadings, observing that leave should be granted freely in order to ensure that a particular claim is decided on "the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990). Furthermore, *pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245–46 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). However, dismissal without leave to amend is justified on grounds of bad faith, undue delay, prejudice, or futility. *Alston*, 363 F.3d at 235–36.

In the case *sub judice*, I recommend that Booze be granted leave to amend his complaint. Permitting Booze an opportunity to amend would neither be prejudicial to the defendants nor futile, as this would be his first amendment.

---

[6] Scattered throughout his complaint, Booze also raises the following claims: willful misconduct, criminal coercion, discrimination, conspiracy, deliberate indifference, negligence, emotional distress, and general violations of the First, Fourth, Fifth, and Fourteenth Amendments. *See also*, *Doc.* 25 at 1. Booze, however, has raised these particular claims in a pure conclusory fashion without providing supportive factual allegations. *See, e.g.*, *Doc.* 1 at ¶ 46. Accordingly, these claims should be dismissed. *See Iqbal*, at 678. Moreover, with respect to Booze's claims that arise under state law, the Court should decline to exercise its supplemental jurisdiction since there are no compelling considerations that weigh in favor of the Court exercising its jurisdiction.

Thus, Booze should be granted leave to amend his complaint in order to cure the deficiencies contained in his complaint.

## IV.  <u>Recommendations.</u>

For the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Booze's complaint (*Doc.* 1) be **DISMISSED**:

    a.  The SCI Coal Township defendants should be **DISMISSED** with prejudice; and

    b.  Booze should be given leave to amend the remainder of his complaint

(2) Defendants' motion to dismiss (*Doc.* 16) be **GRANTED**; and

(3) The case be **REMANDED** to the undersigned for further pre-trial proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record

developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **12th** day of **November, 2013**.

_**S/ Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge