### UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA BOOZE, | : | **CIVIL NO. 1:12-CV-1307** |
| | : | |
| Plaintiff, | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | (Magistrate Judge Schwab) |

### REPORT AND RECOMMENDATION

In this prisoner civil rights action, proceeding *via* an amended complaint the defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   For the following reasons, we recommend that the defendants' motion be granted in part and denied in part.

## I.     Background and Relevant Procedural History.

On July 9, 2012, the *pro se* plaintiff, Joshua Booze ("Booze"), an inmate currently imprisoned at SCI Forrest, initiated this action by filing a complaint against 17 defendants.  *Doc.* 1.  Along with his complaint, Booze filed a motion to proceed *in forma pauperis*, which was granted on July 16, 2012.  *Docs.* 2 & 8.

After waving service, the defendants filed a motion to dismiss Booze's complaint pursuant to Rule 12(b)(6).  *Docs.* 13 & 16.  On June 3, 2014, the defendants' motion was granted in that Booze's claims against the named defendants in their official capacities were dismissed with prejudice and his

1

remaining claims against all defendants in their individual capacities were dismissed with leave to amend. *Docs.* 53 & 54.

On June 19, 2014, Booze subsequently filed an amended complaint. *Doc.* 55. In the amended complaint, Booze names the following 12 defendants, who were also named in the original complaint: (1) John E. Wetzel ("Wetzel"), the Secretary of the Pennsylvania Department of Corrections ("DOC"); (2) John D. Fisher ("Fisher"), the Superintendent at SCI Smithfield; (3) R.S. Irvin ("Irvin"), a corrections officer at SCI Smithfield; (4) Lisa Hollibaugh ("Hollibaugh"), the Superintendent Assistant and Grievance Coordinator at SCI Smithfield; (5) F.C. Shoop ("Shoop"), a Lieutenant at SCI Smithfield; (6) Deputy Whitesel ("Whitesel"), the Deputy Superintendent for Facility Management at SCI Smithfield; (7) Captain Meyers ("Meyers"), the Security Captain at SCI Smithfield; (8) Major Robinson, the Major of Guards at SCI Smithfield; (9) Dorina Varner ("Varner"), the former Chief Grievance Officer with the DOC's Central Office; (10) Tracy Williams ("Williams"), the present Chief Grievance Coordinator; (11) Lieutenant Goss, a Lieutenant at SCI Smithfield; and (12) Sergeant Workinger, the Property Sergeant at SCI Smithfield. *Id.* In addition, Booze adds Lieutenant Allison, a Lieutenant in the Restricted Housing Unit

("RHU") at SCI Smithfield, as a defendant.  *Id.*  Liberally construed, Booze raises the following allegations in his amended complaint.[1]

On October 5, 2010, Booze was transferred to SCI Fayette from SCI Huntingdon because another inmate requested a separation from him.  When Booze arrived at SCI Fayette, he was placed in the RHU for six months.  While in the RHU, Booze had a legal exemption to keep an extra box of legal materials in his cell as he appealed his criminal conviction.[2]  Booze had also signed a "cash slip," authorizing the DOC to deduct money from his prisoner account so that all of his legal materials could travel with him to his next prison assignment.

On April 7, 2011, Booze was transferred from SCI Fayette to SCI Smithfield for administrative reasons.  The following day, Booze was escorted by two unnamed correctional officers to Allison's office.  Inside the office, Booze saw some of his personal property scattered about.  Upon seeing some of his personal property, Booze inquired about his legal materials, including a sworn affidavit and a draft version of his federal habeas corpus petition.  In response, Allison allegedly told Booze that the legal materials would be sent to Meyers.

---

[1]     In accordance with the legal standard, *infra*, we accept Booze's allegations as true.

[2]     Pursuant to DC-ADM 815 § 3.B.8, inmates may request permission to maintain extra storage boxes for legal materials on active cases.  Under this policy, the decision to approve such a request is discretionary.

On or about April 11, 2011, Booze was then escorted to meet with Meyers. During their meeting, Meyers allegedly told Booze that he would "rather let Bin Laden in[to] [the] prison population before [letting Booze in]."   Furthermore, Meyers allegedly told Booze that if he received any more misconduct reports, his name would be placed on the Restricted Release List.  Meyers also mentioned that he would check into Allison's comments about sending Booze's legal papers to him (i.e. Meyers).

On the day after Booze met with Meyers, Booze was released from the RHU at SCI Smithfield.  Less than 24 hours later, however, Booze was taken back to the RHU for reasons that were not explained to him.  Thus, on April 14, 2011, Booze wrote to Meyers to inquire about his new period of confinement in the RHU. Meyers replied, "Booze, you and I know the situation."   In addition, Booze's custody status was reviewed by the Program Review Committee ("PRC"), who stripped Booze of the privileges he had accrued over an eight month period.

As the days passed, with Booze still confined in the RHU, he filed a grievance seeking to obtain the legal materials that Allison had allegedly sent to Meyers.   Booze filed the grievance because all other attempts that he made at retrieving his legal materials were denied.  Booze also filed a request slip directed to Fisher in an attempt to obtain the same legal exemption that he had at SCI

Fayette, with respect to other legal materials that he might have had at SCI Smithfield.[3]  Fisher, however, denied Booze's request.

According to Booze the request was denied despite Fisher's knowledge that his (i.e. Booze's) criminal appeal was still open.  Booze alleges that Fisher had knowledge of his open criminal case since Fisher was responsible for releasing inmates on writs.  And, from May 16-19, 2011, Booze was on writ to Lehigh County Prison.

Regarding Booze's criminal case, he alleges that on May 19, 2011, while he was on writ, the presiding judge ordered Booze to file a supplemental PCRA petition within 30 days.  The presiding judge also provided Booze with a copy of the court's order to give to officials at SCI Smithfield.

On May 26, 2011, Booze was finally returned to SCI Smithfield.  As Booze was being escorted back to his cell, Workinger confiscated his red sneakers. According to Booze, Workinger was "ordered" to do so.  Upon confiscating Booze's sneakers, Workinger did not file a confiscation slip.

On June 8, 2011, $15.68 was deducted from Booze's prisoner account to ship an additional box of legal materials from SCI Fayette to SCI Smithfield. Thereafter, on June 9, 2011, Booze filed a second request slip, seeking Fisher's

---

[3]     While it is unclear, we construe Booze's allegations to mean that some of his legal materials had arrived at SCI Smithfield when he was initially transferred there, and that additional legal materials arrived in June 2011.  Otherwise, Booze's claims make little sense.

approval for a legal exemption for him to house additional legal materials in his cell. Fisher, again, denied Booze's request. Booze, therefore, did not have access to his legal materials and could not timely file a supplemental PCRA petition.

Later, on or about June 25, 2011, additional legal materials belonging to Booze arrived from SCI Fayette. Moreover, Irvin provided Booze with a "confiscation slip," relating to the same materials once they arrived. Irvin allegedly told Booze that he was "ordered" to confiscate the newly arrived legal materials unless his request for a legal exemption was approved. Fisher, however, never approved Booze's requests for an exemption.

Nearly one month later, Booze was transferred from SCI Smithfield to SCI Coal Township. Before his transfer, however, Booze asked Workinger about his confiscated shoes and legal materials. Workinger allegedly told Booze that everything was packed in boxes ready to be shipped, but that Booze needed to sign another cash slip to have the materials mailed to SCI Coal Township.

On July 5, 2011, when Booze arrived at SCI Coal Township, his property was inventoried. Booze was missing certain items of property, however. Also, he could not find certain legal materials. According to an officer at SCI Coal Township, Booze's legal materials did not arrive. Then, on July 11, 2011, $13.19 was deducted from Booze's prison account to have boxes of undescribed materials mailed to him from SCI Smithfield. As of August 3, 2011, Booze was informed

6

that his missing property and legal materials had not arrived at SCI Coal Township.

Since he did not receive his other property and missing legal materials, Booze filed a grievance through the mail to SCI Smithfield. Shoop responded to the grievance by telling Booze that none of his property was at SCI Smithfield, and the grievance was denied. Copies of Shoop's grievance denial were sent to Fisher, Whitesel, and Meyers. Booze then appealed the grievance denial to Fisher. Fisher, though, denied the grievance appeal and informed Booze that his missing property and legal materials were not at SCI Smithfield. Copies of Fisher's decision to deny Booze's grievance appeal were sent to Hollibaugh, Whitesel, Robinson, and Shoop. Booze subsequently appealed further. On October 15, 2011, Williams denied his appeal and suggested that Booze re-check the property he already had in his possession. Copies of Williams' decision were sent to Fisher.

On January 4, 2012, months after Williams' decision on appeal, Booze claims to have received a letter from Hollibaugh stating that a box containing his legal materials had been discovered at SCI Smithfield. Moreover, despite having already signed cash slips, Hollibaugh informed Booze that he must sign another one in order to have that box of legal materials sent to him. After receiving the letter, Booze immediately sent a request and cash slip, asking SCI Coal Township to get the box.

7

On January 27, 2012, once the box arrived, Booze was taken to a room to allow him time to inspect the contents thereof.  According to Booze, the box did not include certain trial transcripts, handwritten notes from trial, and correspondence with his criminal defense attorneys.  Booze adamantly asserts that said materials were taken by officials at SCI Smithfield.  As such, Booze filed another grievance claiming that said legal materials were stolen from him.

Goss was responsible for investigating this grievance, and he re-checked the storage room at SCI Smithfield.  Goss informed Shoop that none of Booze's property remained there.  Consequently, Shoop denied Booze's grievance, stating that only 28 pages of legal materials were confiscated from Booze.  Said materials allegedly contained the name of a different inmate and included gang-related material.  Otherwise, there was no record of other legal materials belonging to Booze at SCI Coal Township.  Copies of Shoop's denial of Booze's grievance were sent to Fisher and Whitesel.  Thereafter, Fisher denied Booze's first appeal, and copies of his decision were sent to Whitesel, Hollibaugh, Robinson, and Shoop.  In addition, Varner denied Booze's final appeal and sent copies of the decision to Shoop and Fisher.

In the end, Booze claims that his PCRA petition was denied and that he is now time-barred from filing a federal habeas corpus petition.  All of this, according to Booze, resulted from him not having access to pertinent legal materials relating

8

to his criminal case.  Moreover, in availing himself of the grievance system, Booze sets forth that the confiscation slip provided to him by Irvin, from June 2011, was disregarded by those who reviewed his grievances.

Based on these factual allegations, Booze claims that his rights guaranteed under the First, Fourth, and Fourteenth Amendments were violated by the defendants in that he was subject to retaliation, suffered a deprivation of due process, and was denied access to the courts.  In addition, Booze raises some state-law claims.  By way of remedy, we liberally construe Booze's complaint to request declaratory relief.[4]  *See Doc.* 55 at 21.

Allison has since been served with summons and a copy of the amended complaint.  In addition, the defendants have collectively filed a motion to dismiss pursuant to Rule 12(b)(6).  *Doc.* 65.  The defendants' motion is ripe for disposition on the merits.

## II.    <u>Legal Standard.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  In considering whether a

---

[4]     We caution Booze that the mere recovery of declaratory relief in this action would not necessarily entitle him to overcome any procedural or substantive deficiencies in the habeas corpus realm.  Nevertheless, he is free to seek a declaratory judgment, declaring that the alleged conduct of the defendants arose to a constitutional dimension, preventing him from timely filing a habeas corpus petition or his claims in state court proceedings.

complaint fails to state a claim under Rule 12(b)(6), a dismissal motion may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that a plaintiff's claims lack facial plausibility. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007). This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations and citation omitted). After *Twombly* and *Ascroft v. Iqbal,* 556 U.S. 662 (2009), "conclusory or bare-bones allegations will no longer survive a motion to dismiss…." *Fowler,* 578 F.3d at 210 (internal quotations and citation omitted). While a complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

A complaint filed by a *pro se* litigant, however, is to be liberally construed and regardless of whether it is inartfully pleaded, the complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaint to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, even litigants proceeding *pro se* must recite factual

allegations that are sufficient to raise the claimed right to relief beyond the level of mere speculation.  Furthermore, these allegations should be set forth in a "short and plain" statement of: the grounds for the court's jurisdiction; the claim showing that the pleader is entitled to relief; and, a demand for the relief sought.  *See* Fed.R.Civ.P. 8(a).

## III.    <u>Discussion.</u>

As mentioned, Booze raises claims pursuant to 42 U.S.C. § 1983 and state law.  For jurisdictional reasons, we will first discuss Booze's § 1983 claims.

In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

*Id.*  "Section 1983[, however,] is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)).  To establish a claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v.*

*Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  The Third Circuit has further explained: "[t]he first step in evaluating a [S]ection 1983 claim is to identify the exact contours of the underlying right said to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013)(*en banc*)(internal quotations and quoted case omitted).

### A.   Eleventh Amendment.

As an initial matter, the defendants argue that Booze's § 1983 and state-law claims should, together, be dismissed pursuant to the doctrine of Eleventh Amendment sovereign immunity.  *Doc.* 69 at 16-17.  To the extent Booze seeks monetary damages from the defendants in their official capacities, the federal and state law claims should indeed be barred by the Eleventh Amendment. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (finding damages claims against state officials sued in their official capacities to be barred by the Eleventh Amendment absent an express waiver); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 117 (1984)(discussing the application of Eleventh Amendment immunity to state-law claims); *see generally Kentucky v. Graham*, 473 U.S. 159, 166–68 (1985)(providing an overview of the distinction between official- and individual-capacity suits); *MCI Telecomm. Corp. v. Bell Atlantic Pa.*,

271 F.3d 491, 503–08 (3d Cir. 2001) (providing an overview of Eleventh Amendment jurisprudence); *see also,* 42 Pa. C.S. §8521(b)("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment….").

We liberally construe Booze's amended complaint, however, to be solely seeking declaratory relief, and the defendants construe the amended complaint in the same manner. *See Doc.* 69 at 6. Nevertheless, Booze's claims for declaratory relief against the defendants in their official capacities should still be dismissed because he is not seeking "prospective relief to end an *ongoing* violation of federal law." *Christ the King Manor, Inc. v. Sec'y of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013)(emphasis added); *see Green v. Mansour*, 474 U.S. 64, 68 (1985)(providing that plaintiffs can bring suits against state officers, but that their remedies are limited to those that are "designed to end a continuing violation of federal law."). Booze's sought after remedy is instead for an alleged injury caused in the past by the defendants, for their interference with his ability to collaterally appeal his state conviction. *See Doc.* 55 at 21. Booze's claims for declaratory relief against the defendants in their official capacities should, therefore, be dismissed. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)("[T]he [*Young*] exception is narrow: it applies only

13

to prospective relief, [and] it does not permit judgments against state officers declaring that they violated federal law in the past...."). [5]

### B. Personal Involvement.

In addition to the elements provided *supra*, it is well-established that claims raised pursuant to § 1983 cannot be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, *via* the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). Accordingly, "there must be allegations that the official had knowledge or acquiesced in any purported acts of constitutional mistreatment."   *Ball v. Hartman*, No. 09-0844, 2010 WL 597401, at *2 (M.D. Pa. Feb. 16, 2010).  Stated differently, individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  *Rode*, 845 F.3d at 1207-08.  Moreover, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  *Id.* at 1208.

---

[5]     In opposition, *see Doc.* 74 at 10, Booze relies upon Pennsylvania's doctrine of state sovereign immunity, which is wholly inapplicable and irrelevant here.

Here, the defendants argue that Booze has failed to sufficiently allege facts plausibly showing that Wetzel, Varner, Williams, Hollibaugh, Whitesel, Robinson, Goss, and Shoop were personally involved in the alleged constitutional violations.

### 1.  Wetzel.

With respect to Wetzel, Booze simply alleges that he is the official who established policies which resulted in the denial of access to his property and legal materials.  Otherwise, outside of the caption, Booze makes no reference to Wetzel.  Given the paucity of allegations relating to Wetzel, we have little difficulty finding that Booze fails to show that Wetzel was personally involved in the alleged constitutional violations.  Indeed, Booze does not attempt to allege that Wetzel knew, or was aware, that any of the DOC's policies were resulting in, or creating an unreasonable risk of, violations of federal law.  Furthermore, there are no allegations in the amended complaint allowing us to reasonably infer that Wetzel participated in, or approved of, any violation of federal that may have been caused by other DOC officers.

### 2.  Varner, Williams, Hollibaugh, Whitesel, Robinson, Goss, and Shoop.

With respect to Varner, Williams, Hollibaugh, Whitesel, Robinson, Goss, and Shoop, they are only referenced in the amended complaint as having after-the-fact knowledge of the alleged constitutional violations through the filing of Booze's grievances.  After-the-fact participation or knowledge, through the review

of a grievance, is not enough to establish personal involvement, however.  *See,*

*e.g., Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to

show the actual knowledge necessary for personal involvement).  Similarly,

allegations that prison officials and administrators responded unfavorably to an

inmate's later filed grievances do not establish the personal involvement of those

officials and administrators in the underlying deprivation. *See Brooks v. Beard*,

167 F. App'x 923, 925 (3d Cir. 2006).  As such, Booze's claims against these

defendants should be dismissed.[6]

### C. Booze's § 1983 Claims against Allison.

According to the defendants, the § 1983 claims against Allison are time-

barred. *Doc.* 69 pp. 19-21.  In opposition, Booze does not address this defense.

On a Rule 12(b)(6) motion, a defendant can only prevail on the statute-of-

limitations defense if a plaintiff's tardiness in bringing the action is apparent on the

face of the complaint.  *See Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174

(3d Cir. 1978); *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85,

106 n. 13 (3d Cir. 2010).  "When the applicability of the statute of limitations is in

---

[6]     In the amended complaint, Booze also complains that he received a legal
memorandum from Hollibaugh in reference to the later discovery of his personal
property at SCI Smithfield.  Regardless of whether Hollibaugh sent the letter,
Booze has not provided any other allegations in the amended complaint involving
Hollibaugh to plausibly suggest personal involvement on her part.  At most, the
letter indicates that Hollibaugh had after-the-fact knowledge of the alleged
deprivations.

dispute, … defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999)(citation omitted). Furthermore, in the context of § 1983 actions, the Third Circuit explained:

> The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. 42 Pa. Cons.Stat. § 5524(2); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir. 1993). Federal law governs a cause of action's accrual date. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted); *see also Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known. *Barren v. United States*, 839 F.2d 987, 990 (3d Cir. 1988). As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. *See United States v. Kubrick*, 444 U.S. 111, 120 (1979). "The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391 (internal quotation marks and citations omitted).

*Kach v. Hose*, 589 F.3d 626, 634-45 (3d Cir. 2009).

Here, Booze's cause of action against Allison originated on April 8, 2011, when Booze allegedly saw his personal property scattered about Allison's office and learned that Allison had sent certain legal materials to Meyers.  *See Doc.* 55 at 20.  Upon these factual allegations, Booze would have had until April 8, 2013, to timely file his § 1983 claims against Allison.

On July 9, 2012, Booze initiated this lawsuit by filing a complaint.  In the complaint, Allison was named, but no claims were raised against him and there were no allegations suggesting that Booze considered him to be a defendant.  Not until June 19, 2014, when the pending amended complaint was filed did Booze include Allison as a defendant and raise claims against him.  Given that, on the face of the amended complaint, the claims against Allison were not raised until after the statute-of-limitations expired we would normally be inclined to find at this point that the claims raised against him should be dismissed.  In a situation such as this, however, to truly determine whether the amended claims are timely, we must go one step further and turn to Rule 15(c) of the Federal Rules of Civil Procedure for guidance.  *See Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001)("Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely complaint.").

Rule 15(c), in relevant part, provides the following:

**(c) Relation Back of Amendments.**

    **(1) When an Amendment Relates Back.** An amendment to a pleading relates back to the date of the original pleading when:

* * *

    (B) the amendment asserts a claim … that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

    (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

    (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

    (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the identity of the proper party's identity.

Fed.R.Civ.P. 15(c)(1).

According to the defendants, Booze's § 1983 claims against Allison should be dismissed because they fail to satisfy the third element, *supra,* -- that the party to be added by amendment knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party -- so as to permit the claims to relate-back to the date the original complaint was filed. *Doc.* 69 at 20-21.

19

Generally, to satisfy the third element, "the plaintiff must demonstrate that a mistake concerning the *identity* of the proper party existed at the time the complaint was filed." *Schach v. Ford Motor Co.*, 210 F.R.D. 522, 527 (M.D. Pa. 2002)(emphasis in original)(citing *Nelson v. County of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995)).   Thus, as an example, the third element is satisfied when a plaintiff, who lacked knowledge of the identity of a Doe defendant when the original complaint was filed, seeks to amend the complaint by substituting the Doe with the name of a person. *See Singletary*, 266 F.3d at 200-01.   In this case, though, Booze was aware of Allison and his conduct.   Indeed, in his complaint, Booze names Allison and mentions that he filed a grievance against him. *Doc.* 1 at 8, ¶ 56.   Moreover, in the complaint, Booze later asserts that Allison was not to be named as a defendant. *Id.* at 9, ¶ 64.   Accordingly, Booze most certainly knew of Allison.   Thus, this is not a case of mistaken identity, and the claims against Allison should be dismissed as time-barred. *See DiLauri v. Mullen*, 477 F. App'x 944, 947 (3d Cir. 2012)(per curiam)(agreeing with the Magistrate Judge's finding that the claims against the newly named defendants did not relate back because it was not a case of mistaken identity).

**D. Due Process.**

The Fourteenth Amendment provides, in relevant part, that no "State [shall] deprive any person of life, liberty, or property without due process of law…." U.S. CONST. Amend. XIV, § 1. "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266, (1998). In analyzing any procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)). Once it is determined that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In the amended complaint, Booze raises a due process violation stemming from the alleged confiscation, or mishandling, of his legal materials and shoes.[7]

---

[7]     We disagree with the defendants that Booze has raised a due process claim with respect to the fact or duration of his confinement. *See also, Doc.* 74 at 12. Nor do we construe the amended complaint to include a due process claim stemming from Fisher's denial of Booze's request to possess extra legal materials. We understand said allegations to relate to Booze's access-to-courts and retaliation claims, instead. Nevertheless, assuming for argument's sake that Booze were trying to raise a due process claim upon the latter scenario, we would recommend that the claim be dismissed since prisoners have no property interest in items classified as contraband. *Miller v. DiGuglielmo*, No. 07–2686, 2011 U.S. Dist. LEXIS 12603, 2011 WL 382624, at *7 (E.D. Pa. Feb. 4, 2011) (citing *Helton v. Hunt*, 330 F.3d 242, 247–48 (4th Cir. 2003)); *Dantzler v. Beard*, No. 09–275, 2010

In *Parratt v. Taylor*, 451 U.S. 527 (1981), an inmate claimed that prison officials had negligently deprived him of his property without due process of law. The *Parratt* Court held that the alleged loss constituted a deprivation of property under the Fourteenth Amendment's due process clause. *Id.* at 536–37. Nevertheless, the Court also held that negligent deprivations by state officials of a prisoner's personal property are not actionable under the due process clause where a remedy exists under state law for reimbursement. *Id.* at 541–43.

Subsequently, in *Hudson v. Palmer*, 468 U.S. 517 (1984), the Court held that, regardless of whether a government employee intentionally or negligently deprived an inmate of his or her property, the deprivation does not violate the due process clause as long as the inmate has adequate post-deprivation remedies available under state law. *Id.* at 533. Moreover, in *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986), the Court overruled the holding in *Parratt* that a mere lack of due care by a state official may deprive an individual of property under the Fourteenth Amendment. *Id.* at 330–31. The *Daniels* Court concluded "that the

---

U.S. Dist. LEXIS 107656, 2010 WL 1008294, at *10 (W.D. Pa. Mar. 15, 2010). While the additional legal materials that Booze sought to possess in his cell were not contraband *per se*, the DOC places restrictions upon the type and amount of property to be possessed by inmates, *see* DC-ADM 801 § 6.A.7 (property restriction on inmates in the RHU), and considers anything in excess of those amounts to be contraband. *See* DC-ADM 815 §§ 3.B.6, C. Furthermore, to balance the need of prisoners to work on cases while in disciplinary custody, DC-ADM 801 § 6.A.8 allows prisoners to exchange out legal materials at least once per month, and once per week in special circumstances.

Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328.

In a more recent case, the Third Circuit invoked the holding in *Hudson* in determining that the District Court properly found that a state inmate had failed to state a procedural due process claim where he was provided with a meaningful post-deprivation remedy regarding the loss of his property through the state prison system's internal grievance procedure. *Mattis v. Dohman*, 260 F. App'x 458, 461 (3d Cir. 2008) (citing *Hudson*, 468 U.S. at 533).

Here, to the extent Booze's claim is that his legal materials were negligently confiscated, there has been no deprivation of property under the Due Process Clause. *See Daniels*, 474 U.S. at 328.  Regardless, we also find that Booze had a meaningful post-deprivation remedy available to him through the DOC's inmate grievance system, *See Durham v. Dep't of Corr.*, 173 F. App'x 154, 157 (3d Cir. 2006)(holding that the DOC's inmate grievance system "provides an adequate post-deprivation remedy" in satisfaction of the Due Process Clause, for prisoners making claims for damage to or loss of personal property); *McEachin v. Beard*, 319 F.Supp.2d 510, 514–15 (E.D. Pa. 2004) (citing *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)), and Booze admits in the amended complaint that he took full advantage of the system.  That Booze might be dissatisfied with the investigation and result, fails to show that the remedy was

23

not meaningful.  Indeed, Booze had an opportunity to be heard, in writing, and present evidence in support of his grievances.  Accordingly, we recommend that Booze's due process claim be dismissed.

### E. Retaliation.

Under the First Amendment, the right to petition the Government for a redress of grievances is preserved.  U.S. CONST. Amend. I.  To prevail on a First Amendment retaliation claim, a prisoner must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered some "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) his protected conduct was a substantial or motivating factor in the decision to discipline him.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Of the defendants that we have not recommended be entirely dismissed, Booze complains that Fisher retaliated by denying his requests to possess additional legal materials in his cell.  The retaliation allegedly occurred because Booze had filed a grievance against Allison and Meyers.  Booze also sufficiently

alleges that Fisher had knowledge, or awareness, of Booze's active criminal appeal.

In addressing this claim, we recognize that, under the first element, "[t]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity." *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373–84 (1981)). Thus, Booze's allegations, accepted as true, plausibly suggest that he engaged in constitutionally protected conduct.  As well, Booze's allegations plausibly suggest that adverse action was taken against him, in that his requests to possess additional legal materials were denied, and such denials allegedly preventing him from litigating his collateral appeals, in his criminal case.  Last, although Booze did not have a right to possess legal materials in excess of the DOC's policy, given that the grievance against Meyers and Allison was allegedly filed on the same date as Booze filed his first request for a legal exemption with Fisher, there appears to be an unusually suggestive temporal proximity between the protected conduct and the adverse action that was eventually taken in the two-plus months that Booze was imprisoned at SCI Smithfield.  Construing these factual allegations in the light most favorable to Booze, we find that he has sufficiently stated a retaliation claim against Fisher.

25

Next, Booze complains that Irvin deprived him of newly arrived legal materials from SCI Fayette because of the same grievance that had been filed against Allison and Meyers.  In support, Booze alleges that on or about June 25, 2011, more of his legal materials arrived from SCI Fayette.  Irvin, however, allegedly told Booze that he was "ordered" to confiscate the newly arrived legal materials unless Fisher approved his (i.e. Booze's) request to possess additional legal materials.  In the end, Booze never recovered all of the materials confiscated by Irvin.

Upon these allegations, we recommend that this retaliation claim should also proceed.  We make this recommendation with hesitation, however.  Of concern is Booze's apparent concession that Irvin had a legitimate reason for confiscating his legal materials in that RHU inmates are limited to the amount of materials they may possess in their cell at one time.  On the face of the amended complaint, though, we cannot tell for certain whether the newly arrived legal materials would have placed Booze over the restrictive limit.  Moreover, since we are to accept the allegations as true and construe them in Booze's favor, we recommend allowing the claim to proceed on the basis that there is an unusually suggestive temporal proximity between the adverse action and the constitutionally protected conduct engaged in by Booze two months prior, when he filed the grievance.

With respect to Meyers, Booze asserts that he is also raising a retaliation claim.  The claim should be dismissed, however, because Booze utterly fails to show what constitutionally protected conduct he was engaged in when adverse action was taken against him.  Indeed, it is alleged that Allison had already turned over some of Booze's legal materials to Meyers prior to the filing of Booze's grievance against them, and there are no allegations to suggest that Meyers planned on later turning over the documents before the filing of the grievance against him, or that Booze made subsequent requests to Meyers for those same documents after the grievance was filed.  Furthermore, Booze does not claim that he was sent to the RHU after having engaged in constitutionally protected conduct.  Accordingly, the retaliation claim against Meyers should be dismissed.

Last, we liberally construe Booze's amended complaint to include a retaliation claim against Workinger, and we recommend that the claim proceed.  Based upon our liberal construction of the amended complaint, Booze claims that Workinger confiscated his red sneakers in retaliation for having filed a grievance against Allison and Meyers.  Given the alleged timeline of events, we find that Booze has stated a claim for relief.  Similar to Booze's retaliation claim against Irvin, however, we are hesitant to make this recommendation.  Our primary concern is that Workinger may have had a legitimate justification for confiscating

those sneakers.  On the face of the complaint, though, we cannot presently make that determination.

## F.  Access to Courts.

It is well-established that an inmate has a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 349–56 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977); *Abdul–Akbar v. Watson*, 4 F.3d 195, 202–03, 205 (3d Cir. 1993). "To state a cognizable access to courts claim, a plaintiff must plausibly show that: (1) he suffered an 'actual injury' (i.e., that he lost an opportunity to pursue a nonfrivolous claim); and (2) he has no other remedy, save the present civil rights suit that can possibly compensate for the lost claim." *Williams v. Clancy*, 449 F. App'x 87, 89 (3d Cir. 2011) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)).

Here, throughout his amended complaint, Booze claims that the confiscation of his additional legal materials from SCI Fayette and the refusal to provide him with an exemption to possess additional materials in his cell, denied him access to the courts.  More precisely, Booze alleges that without access to all of his legal materials he was unable to successfully litigate the ineffective-assistance-of-counsel and "Interstate Agreement" issues raised in his PCRA petition. Furthermore, Booze asserts that the time for him to file a federal habeas corpus

petition has since expired, and he could not file a timely federal habeas petition without those same legal materials.

Noticeably missing from Booze's amended complaint, though, are sufficient allegations regarding the merits of the issues raised in his collateral appeal, and the issues he desired to raise in a federal habeas corpus petition. Booze, instead, merely stated the type of claims that he raised, without any additional allegations. *See Doc.* 55 at 7, 15. That is plainly insufficient. Absent allegations about the merits of the claims he raised or wished to raise, Booze has failed to state a claim for relief, as he does not plausibly show that his claims were, or would be, based on anything more than mere hope. *See Monroe*, 536 F.3d at 205-06 (citing *Christopher v. Harbury*, 536 U.S. 403, 416-17 (2002)).

### G. State-Law Claims.

Even though the parties do not address it, we must proceed to discuss whether the Court should exercise supplemental jurisdiction over the remaining state-law claims for negligence, willful misconduct, official oppression, and criminal coercion. In pertinent part, 28 U.S.C. § 1367, which establishes the supplemental jurisdiction of the Federal District Courts, provides:

> Except as provided in subsection[] … (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

> jurisdiction that they form part of the same case or controversy
> under Article III of the United States Constitution.

28 U.S.C. § 1367(a).   Section 1367 (c), in turn, provides that district courts may

decline to exercise supplemental jurisdiction over a claim under Subsection (a) if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims
> over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has
> original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling
> reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

As discussed, *supra*, the only federal claim that we recommend to proceed is

Booze's retaliation claim against Fisher, Irvin, and Workinger.   Said federal claim

gives rise to the Court's original jurisdiction pursuant to 28 U.S.C. § 1331.

Accordingly, at this juncture, the supplemental-jurisdiction statute requires us to

analyze whether Booze's state-law claims are part of the same Article III "case or

controversy" as the aforementioned First Amendment claim.   This standard was

explained by the Supreme Court in *United Mine Workers of America v. Gibbs*.

In *Gibbs*, the Supreme Court established three requirements that must be

satisfied:

> The federal claims must have substance sufficient to confer subject-matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if considered without regard to their state or federal character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in the federal courts to hear the whole.

383 U.S. 715, 725 (1966) (footnote and internal citation omitted).  Pursuant to this line of reasoning, a district court may not assert supplemental jurisdiction over claims that are totally unrelated to the federal claims that form the basis of the Court's jurisdiction.  *In re: Prudential Ins. Co. Am. Sales Prac. Litigation Agent Actions*, 148 F.3d 283, 302 (3d Cir. 1998)(citation omitted).  Moreover, the Third Circuit has explained that "§ 1367 does not permit courts to take jurisdiction over tangentially related claims." *Id.* at 303.

With respect to Booze's state-law claims, we find that the Court should exercise supplemental jurisdiction over them.[8]  Indeed, the retaliation claims against Fisher and Irvin and the state-law claims derive from a common nucleus of operative fact relating to the confiscation and deprivation of his legal materials. Moreover, we see no reason to decline to exercise supplemental jurisdiction under § 1367(c).  Absent argument and evidence to the contrary on the issue of this Court's supplemental jurisdiction, Booze's state-law claims should proceed.

---

[8]    Presuming that the statute-of-limitations for these state-law claims is also two years, our previous recommendation about the timeliness of Booze's claims against Allison should apply.

Furthermore, we decline to address the sufficiency of Booze's state-law claims since the defendants did not address them in their motion to dismiss.[9]

## IV.    Recommendations.

For these reasons, **WE RECOMMEND** that:

(1) Defendants' motion to dismiss (*Doc.* 65) be **GRANTED** in part and

  **DENIED** in part as follows:

  (a) Defendants' motion should be denied with respect to Booze's retaliation and conspiracy claims against Fisher, Irvin, and Workinger, and with respect to Booze's state-law claims; and

  (b) Defendants' motion should be granted in all other respects.

(2) The case be **REMANDED** to the undersigned for further pre-trial case management.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The

---

[9]    Similarly, since the defendants did not address the sufficiency of Booze's federal civil conspiracy claim against Fisher and Workinger, *see Doc.* 55 at 20, ¶ 97, we do not address it herein and recommend that it proceeds.

briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record 25 developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **10th** day of **February 2015**.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge