## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA BOOZE,              :     CIVIL NO: 1:12-CV-01307

        Plaintiff,         :

                       :     (Judge Kane)

     v.                  :

                       :     (Chief Magistrate Judge Schwab)

JOHN E. WETZEL, *et al.*,     :

                       :

        Defendants.     :

## REPORT AND RECOMMENDATION

### I. Introduction.

On July 9, 2012, the plaintiff, Joshua Booze ("Booze"), a former inmate of the State Correctional Institution at Smithfield, Pennsylvania ("SCI-Smithfield"), commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 by filing a complaint (*doc. 1*), followed by an amended complaint (*doc. 55*). After years of litigation, only federal claims of retaliation and conspiracy, as well as state law claims of negligence, willful misconduct, official oppression, and criminal coercion, have survived, and only three defendants remain, all of whom were employed at SCI-Smithfield during the relevant time period: Richard Irvin ("Irvin"), a Corrections Officer Trainee; Thomas Workinger ("Workinger"), the Property Sergeant; and Jon Fisher ("Fisher"), the Superintendent (collectively referred to hereinafter as the "Defendants").

This matter comes back before the Court as the Defendants, who have been previously denied a motion to dismiss on Booze's surviving claims (*see docs. 76, 78*), have now filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See doc. 108.* The motion, which has been fully briefed, is ripe for the Court's disposition. For the reasons that follow, we recommend granting the Defendants' motion for summary judgment.

## II. Material Facts.

Pursuant to the Local Rules for the United States District Court for the Middle District of Pennsylvania, a party moving for summary judgment must attach to the motion "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. The non-moving party is required to submit "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement], as to which it is contended that there exists a genuine issue to be tried." *Id.* Both statements must reference the record for support, and the moving party's statement will be deemed admitted unless controverted by the non-moving party. *See id.*

Here, the Defendants, as the moving party, have filed a statement of material facts, supported by adequate references to the record.[1] *See doc. 112.* Booze, as the non-moving party, has also filed a statement of material facts in response to the Defendants' statement of material facts.[2] *See doc. 117.* Thus, except where expressly noted, the relevant undisputed material facts, as culled from the parties' statements, are set forth below.

**A. Background.**

Booze is serving a 23 to 46 year sentence for robbery in the custody of the Pennsylvania Department of Corrections (the "Department"). *Doc. 112* at ¶ 1; *doc. 117* at ¶ 1. At some point prior to April of 2011, Booze was confined in administrative custody in the Restricted Housing Unit ("RHU") at SCI-Fayette. *Doc. 112* at ¶ 2; *doc. 117* at ¶ 2. He remained in the RHU during the time that he

---

[1] In their statement, the Defendants have identified several departmental policies. *See, e.g.*, *doc. 112* at ¶¶ 5-17 (policy regarding inmate property); ¶¶ 18-21 (policy regarding an inmate's request for a legal exemption); ¶¶ 56-61 (policy regarding the exhaustion of administrative remedies). Considering, however, that those policies have been attached as exhibits to their statement, and given that those policies speak for themselves, the Court will not set out the Defendants' interpretation of such policies as material facts.

[2] In addition, Booze has filed what appears to be his own affirmative statement of the undisputed material facts. *See doc. 118.* The Local Rules of this Court, however, do not contemplate a non-moving party's furnishing of his own statement of the undisputed material facts. *See* M.D. Pa. L.R. 56.1. Aside from not being contemplated by the Local Rules, this document is not necessary to defeat the Defendants' motion for summary judgment. Thus, we will disregard this document in its entirety.

was confined at SCI-Fayette. *Doc. 112* at ¶ 3; *doc. 117* at ¶ 3. On April 7, 2011, he was transferred from SCI-Fayette to SCI-Smithfield, where he was also confined in administrative custody in the RHU. *Doc. 112* at ¶¶ 3, 4; *doc. 117* at ¶¶ 3, 4.

**B. Booze's Request to Fisher for a Legal Exemption.**

While at SCI-Smithfield, Booze sent Fisher 2 request slips, both of which sought a "legal exemption." *Doc. 112* at ¶ 22; *doc. 117* at ¶ 22. According to Booze, he wanted a "legal exemption" to retain the additional box of legal materials, which had not yet been shipped to SCI-Smithfield from SCI-Fayette, in his cell in the RHU. *Doc. 112* at ¶ 23; *doc. 117* at ¶ 23. The parties dispute when, exactly, the box arrived at SCI-Smithfield. *See doc. 112* at ¶ 24; *doc. 117* at ¶ 24.

On April 22, 2011, Fisher received Booze's first request slip. *Doc. 112* at ¶ 25; *doc. 117* at ¶ 25. Although the parties do not dispute that Fisher denied this request, the parties dispute why Fisher did so. *See doc. 112* at ¶ 26; *doc. 117* at ¶ 26.

On June 9, 2011, Fisher received Booze's second request slip. *Doc. 112* at ¶ 27; *doc. 117* at ¶ 27. The parties, similar to Booze's first request slip, do not dispute that Fisher ultimately denied Booze's second request slip, but they do dispute why Fisher did so. *See doc. 112* at ¶¶ 27, 28; *doc. 117* at ¶ 28.

### C. Booze's Claims Against Workinger.

Booze was transferred to a county facility on May 18, 2011, and was returned to SCI-Smithfield on May 26, 2011. *Doc. 112* at ¶ 36; *doc. 117* at ¶ 36. The Defendants have offered evidence that, upon Booze's arrival to SCI-Smithfield, his property was inventoried. *Doc. 112* at ¶ 37; *doc. 117* at ¶ 37. At the time his property was inventoried, Booze had a pair of red and black Nike sneakers. *Doc. 112* at ¶¶ 37, 38; *doc. 117* at ¶¶ 37, 38. Workinger issued Booze a confiscation slip for the sneakers and confiscated the sneakers. *Doc. 112* at ¶ 44; *doc. 117* at ¶ 44.

### D. Booze's Claims Against Irvin.

On June 25, 2011, Irvin was directed to retrieve Booze's box of legal materials. *Doc. 112* at ¶¶ 46, 47; *doc. 117* at ¶¶ 46, 47. The parties dispute whether Irvin opened the box and whether he met with Booze about the confiscation of the box. *Doc. 112* at ¶ 50; *doc. 117* at ¶ 50. The Defendants have offered evidence that Irvin neither opened the box, nor met with Booze. *Doc. 112-5* at ¶ 4. Booze has offered evidence, however, that Irvin not only opened the box, but met with him at his cell regarding the confiscation of the box. *Doc. 121* at ¶¶ 5-9.

Irvin ultimately issued Booze a confiscation slip for the box, noting it would be held pending a legal exemption, and transferred the box to the property intake

area pending review of a request to maintain excess legal materials (*doc. 112 at ¶¶ 51, 52; doc. 117 at ¶¶ 51, 52*). The parties dispute whether the box constituted "excess legal materials" (*doc. 112 at ¶ 51; doc. 117 at ¶ 51*). The parties also dispute whether Irvin (a) attached the confiscation slip to the box, so that, after a final decision was made on the legal exemption, the property could later be identified, or (b) delivered the confiscation slip to Booze at his cell. *See doc. 112 at ¶ 52; doc. 117 at ¶¶ 50, 52.*

After Irvin transported Booze's box to the property intake area, he had no further contact with the box, and he was not aware of any issues with the box until Booze filed this action. *Doc. 112 at ¶ 53; doc. 117 at ¶ 53.* Irvin was also not aware of any grievances or complaints by Booze when he issued the property confiscation slip on June 25, 2011.[3] *Doc. 112 at ¶ 54; doc. 117 at ¶ 54.*

### E. Exhaustion.[4]

Booze filed 9 grievances relating to his confinement at SCI-Smithfield (*doc. 112 at ¶ 62; doc. 117 at ¶ 62*), and of those 9 grievances, only 3 relate to the claims

---

[3] Although Booze attempts to dispute this fact, his attempts are unpersuasive for two main reasons. First, although he has "denied" this proffered fact as a "legal argument" (*see doc. 117 at ¶ 54*), we neither view, nor treat, this proffered fact as improper legal argument. Second, Booze has not otherwise pointed to any record evidence that shows a genuine dispute of this material fact.

[4] Notably, Booze has not disputed the any of the facts in the exhaustion section of the Defendants' statement of material facts. *Compare doc. 112 at ¶¶ 56-65 with doc. 117 at ¶¶ 56-65.*

remaining in this action: Grievance 367034 (regarding the confiscation of Booze's sneaks by Workinger); and Grievances 377915 and 399327 (regarding missing property). *Doc. 112* at ¶ 63; *doc. 117* at ¶ 63. Booze appealed only the latter two grievances (i.e., Grievances 377915 and 399327) to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") for final review. *Doc. 112* at ¶ 66; *doc. 117* at ¶ 64. Both appeals were accepted by SOIGA and ultimately denied. *Doc. 112* at ¶ 65; *doc. 117* at ¶ 65.

## III. Legal Standards.

As mentioned, the Defendants have moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." FED. R. CIV. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.  Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex*, 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV. Discussion.

### A. Exhaustion.

Workinger and Fisher[5] seek summary judgment in their favor, asserting that Booze has failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"). *See doc. 111* at 5-7. Generally, the PLRA requires that prisoners present their claims through an administrative grievance process prior to seeking redress in federal court. More specifically, the PLRA provides that:

---

[5] Irvin has not moved for summary judgment on the basis of administrative exhaustion, and for that reason, the claims asserted against him will be addressed on the merits below.

> No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Thus, in accordance with the PLRA, prisoners must comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").

As the PLRA's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court –or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the Court, even if that determination requires the resolution of disputed facts. *See Small v.*

*Camden County*, 728 F.3d 265 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. *Id.* at 90; *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him. *Woodford*, 548 U.S. at 95. If, however, an inmate shows that the actions of prison officials directly caused the procedural default of his grievance, the inmate will not be held to strict compliance with the exhaustion requirement. *Brown v. Croak*, 312 F.3d 109, 112-13. Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." *Small v. Camden County*, 728 F.3d 265, 271 (3d Cir. 2013).

Here, the parties do not dispute that Booze filed 9 grievances regarding his confinement at SCI-Smithfield. The parties also do not dispute that, of those 9 grievances, only 3 relate to the remaining claims in this action, specifically, Grievance 367034, Grievance 377915, and Grievance 399327. The parties instead

dispute whether Booze, *via* any of those grievances, has properly exhausted his available administrative remedies with respect to the claims he has brought against Workinger and Fisher.

The Department maintains three separate policies that inmates can use to present grievances administratively, namely, the Inmate Discipline Policy, DC-ADM 801; the Administrative Custody Policy, DC-ADM 802; and the Inmate Grievance System Policy, DC-ADM 804. *See* http:// www.cor.state.pa.us, Department Policies. Two of these policies, DC-ADM 802 and 804, are implicated in this case. Generally speaking, both of these policies are built around multi-tier processes: DC-ADM 804 provides for an initial grievance at the institutional level, an appeal to the Facility Manager, and an appeal to SOIGA; and DC-ADM 802 provides that an inmate may raise their concerns initially with the Program Review Committee, then to the Facility Manager, and then, finally, to the Chief Hearing Examiner. *See* http:// www.cor.state.pa.us, Department Policies.

### 1. Exhaustion of the Claims Against Workinger.

The Defendants argue that, although Booze filed a grievance regarding the confiscation of his sneakers (i.e., the incident underlying his claims against Workinger), Booze failed to comply with the Inmate Grievance Policy, DC-ADM 804, because he did not appeal that grievance to SOIGA for final review. *See doc. 111* at 7. In support, the Defendants have produced the following evidence: that on

13

May 31, 2011, Booze filed Grievance 367034, regarding the confiscation of his sneakers (*see doc. 112-6* at 4, ¶ 15); that on June 2, 2011, an initial review decision was issued, denying that grievance and informing Booze that the sneakers were confiscated as contraband items not permitted by Department policy (*see id.* at ¶ 16); that on June 9, 2011, Booze appealed that initial review decision to Fisher (*id.* at ¶ 17); that Fisher, on June 17, 2011, issued a decision upholding the initial review decision (*id.* at ¶ 18); and finally, that Booze never appealed Fisher's decision to SOIGA for final review (*doc. 112-7* at 4, ¶ 15).

In response, Booze has offered no evidence that he filed an appeal to SOIGA. He has, however, offered an argument as to why he was not required to do so. More specifically, Booze argues that once he was granted the relief he sought in Grievance 367034 (i.e., that his sneakers be placed into his property and returned to him, or that he be given the full price of the sneakers (*see doc. 112-6* at 16)), the exhaustion of that grievance was complete. *Doc. 116* at 3. The record, however, does not support his argument.

After Fisher issued his decision on June 17, 2011, Booze had 15 working days, or until July 2, 2011, to file an appeal to SOIGA. *See doc. 112-7* at ¶¶ 7, 13. Booze alleges that he never filed an appeal to SOIGA because he had already been granted the relief he sought in Grievance 367034. The record reflects, however, that at no point during the appeal period (i.e., June 17, 2011, to July 2, 2011) was

Booze granted the relief he sought in Grievance 367034. The record further reflects that it was not until July 5, 2011, after the appeal period had already expired, that Booze was allegedly granted the relief he sought. *See doc. 116* at 3 (citing to his amended complaint and explaining that on July 5, 2011, while waiting on the bus to be transferred from SCI-Smithfield to SCI-Coal Township, Workinger informed him that his shoes would be placed in one of his boxes and transferred to SCI-Coal Township). Further, despite Booze alleging that, on July 5, 2011, he had been granted the relief he sought, the record shows that shortly thereafter, Booze filed another grievance, specifically, Grievance 377915, explaining that he "never" received his property, including his sneakers. *Doc. 112-6* at 26.

Thus, we are unpersuaded by Booze's argument that he was not required to file an appeal to SOIGA because he had already been granted the relief he sought. Simply stated, the record does not support this argument. Consequently, we conclude that he has not exhausted his administrative remedies with respect to the claims he has brought against Workinger. Summary judgment should, therefore, be granted in favor of Workinger.

### 2. Exhaustion of the Claims Against Fisher.

The Defendants also argue that Booze did not submit a single grievance on the denial of the legal exemption (i.e., the incident underlying his claims against

Fisher).  *Doc. 111* at 7.  In support, the Defendants have produced evidence that none of the three grievances, which undisputedly relate to this action, concern the denial of a legal exemption.  *See doc. 112-6* at ¶¶ 7-39.

In response, Booze has not offered any evidence that he filed a grievance regarding the denial of the legal exemption against Fisher.  Instead, he alleges that "according to the DC-ADM 804 Policy, [he] could not file a grievance [on that denial] because it has to do with keeping an extra box in his cell while on '**Administrative Custody**' which falls under the DC-ADM 802 Policy."  *Doc. 116* at 3 (emphasis in original).  Liberally construing this allegation, Booze appears to be arguing that, because he was confined in administrative custody in the RHU, he could not file his grievance pursuant to the Inmate Grievance Policy, DC-ADM 804; he could only file his grievance pursuant to the Administrative Custody Policy, DC-ADM 802.  *Id.*

As discussed above, the Department maintains two separate grievance procedures that apply to Booze's claims: DC-ADM 802 and 804.  While the Court certainly recognizes that the different procedures the Department utilizes depending on the inmate's custody classification may present a challenge for the inmates, we find that Booze not only knew about these procedures, but further, he appears to have been intimately familiar with the differences between them.  Nevertheless, the record shows that Booze did not utilize either procedure to grieve

his complaints about retaining an additional legal box in administrative custody in the RHU. Rather, the record shows that none of the three grievances, which undisputedly relate to the remaining claims in this action, concern Booze's request for a legal exemption. *See doc. 112-6* at 16-19, 26-30, 31-39.

Further, although Booze alleges that he "could not" file a grievance pursuant to DC-ADM 804, since he was in administrative custody at the time he filed his inmate requests, a closer look at the record reveals that this is legally and factually inaccurate. Booze filed his first inmate request, seeking a legal exemption, on April 21, 2011. *See doc. 128* at 4. At that time, the regulatory scheme in effect provided that DC-ADM 802 only governed challenges "to initial or continued confinement in administrative custody[, while] DC–ADM 804 remained applicable to challenges unrelated to custody status." *Washington-El v. Beard*, 562 F. App'x 61, 64 (3d Cir. 2014). Because Booze was challenging a legal exemption, and not his initial or continued confinement in administrative custody, he would have been required to utilize DC-ADM 804, not DC-ADM 802. This analysis changes, however, with respect to the second inmate request that Booze filed on June 9, 2011. *See doc. 128* at 5. At that time, DC-ADM 802 had been amended to be the exclusive vehicle an inmate in administrative custody (or AC Custody), has to pursue any issue concerning placement, duration, conditions, or other circumstances related to administrative custody status. *See DC–ADM 802 § 2, ¶*

D.9; *see also Washington-El*, 562 F. App'x at 65 ("In 2011 . . . DC–ADM 802 was amended to provide that '[a]ll issues concerning an inmate's placement in [administrative] custody or the duration, conditions or other circumstances of his/her [administrative custody] status must be addressed through the procedures set for in this directive and may not be addressed through the procedures set forth in DC–ADM 801 [pertaining to disciplinary proceedings] or DC–ADM 804.'" (citing DC–ADM 802 § 2, ¶ D.9) (emphasis removed)); *Buehl v. Fisher*, No. 3:10-CV-2288, 2014 WL 1334219, at *12 (M.D. Pa. Apr. 2, 2014) ("On June 1, 2011, the Administrative Custody Procedures Policy, DC–ADM 802, was amended to provide that '[a]ll issues concerning an inmate's placement in AC custody or the duration, conditions or other circumstances of his/her AC custody must be addressed through the procedures set forth in this directive and may not be addressed through the procedures set forth in DC–ADM 801 or DC–ADM 804. An inmate is required to raise any issue concerning the duration or other conditions of his/her AC custody during the regularly scheduled PRC review.'" (citing DC–ADM 802 § 2.D.9)). Thus, because this amendment was in effect on June 9, 2011, when Booze filed his second inmate request, he would have been required to utilize DC-ADM 802, not DC-ADM 804.[6]  Yet, as previously discussed, Booze

---

[6] Notably, DC-ADM 802 appears to have since been amended. The current version of DC-ADM 802, which was issued on October 31, 2016, and made effective November 14, 2016, provides as follows:

utilized neither DC-ADM 802, the procedure he claims was applicable, nor DC-ADM 804, to grieve his complaints about retaining an additional legal box in administrative custody in the RHU.

Finally, although not argued by Booze, there is no indication in the record that any prison official at SCI-Smithfield, or elsewhere, interfered with his right to file a grievance, and the record suggests quite the opposite.  Indeed, the undisputed record shows that he filed 9 grievances regarding his confinement at SCI-Smithfield, some of which he filed the whole way to final review.  *See Davis v. Warman*, 49 Fed. Appx. 365, 368 (3d Cir. 2002) (cautioning courts that they should be "reluctan[t] to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."); *Nyhuis v. Reno*, 204 F.3d 65, 72 (3d Cir. 2000) (explaining that an inmate's sense of futility of a grievance, or the grievance process, does not excuse compliance with the law).

Thus, we conclude that Booze has also failed to properly exhaust his claims against Fisher.  *See Nyhuis*, 204 F.3d at 73 ("[I]t is beyond the power of this court –or any other – to excuse compliance with the exhaustion requirement, whether on

---

12.    Conditions or other circumstances of the inmate's AC status, other than reason or duration, must be addressed through the grievance process set forth in Department policy DC-ADM 804.

DC-ADM 802, Section 2, D. 12 (emphasis in original removed).

the ground of futility, inadequacy or any other basis." (quoting *Beeson*, 28 F. Supp.

2d at 894-95)). Summary judgment should, therefore, be granted in favor of

Fisher.

**B. The Merits.**

Because Irvin did not seek summary judgment on the basis of administrative

exhaustion, we address the claims Booze has brought against him on the merits.[7]

### 1. Booze's Federal Claims.

Booze brings his federal claims pursuant to 42 U.S.C. § 1983, which

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress
> . . . .

42 U.S.C. § 1983. Thus, in order for Booze to establish a claim under § 1983

against Irvin, Booze must allege the violation of a right secured by the

Constitution and laws of the United States, and he must show that Irvin

committed the alleged violation while acting under color of state law. *See*

*Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting

---

[7] Although all of the Defendants have raised arguments as to the merits of Booze's
claims, we will only address Irvin's arguments since Workinger and Fisher should
be granted summary judgment on the basis of administrative exhaustion.

*West v. Atkins*, 487 U.S. 42, 48 (1988)).  In this case, the parties do not dispute that Irvin was acting under color of state law; thus, we must identify the exact contours of the underlying right'" that Booze asserts was violated.  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998))).

### a. First Amendment Retaliation Claim.

The First Amendment provides that:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

U.S. CONST. amend. I.  The First Amendment is incorporated into the Fourteenth Amendment's Due Process Clause and is, therefore, applicable to the states.  *Miller v. Clinton Cty.*, 544 F.3d 542, 545 n.1 (3d Cir. 2008) (citing *Phillips v. Keyport*, 107 F.3d 164, 183 (3d Cir. 1997)). "Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment." *Mincy v. Chmielewski*, No. 1:05-CV-0292, 2007 WL 707344, at *5 (M.D. Pa. Mar. 2, 2007), *aff'd sub nom. Mincy v. Klem*, 277 F. App'x 239 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000)).

In order to prevail on a First Amendment retaliation claim, a plaintiff must prove the following three elements: (1) the activity that led to the alleged retaliation

was constitutionally protected; (2) he was subjected to adverse actions by a state actor; and (3) there is a causal link between the exercise of the constitutionally protected activity and the adverse action. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). If the plaintiff proves all three elements, then the burden shifts to the state actor to prove that it would have taken the same action absent the protected conduct. *Mt. Healthy*, 429 U.S. at 287; *see also Rauser*, 241 F.3d at 334 (explaining that prison officials may prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest).

Here, with respect to the first element, Booze claims that he engaged in constitutionally protected activity by filing a grievance and two inmate request slips. More specifically, he alleges that on April 21, 2011, he filed the following: a grievance against Allison, a Lieutenant in the RHU, for confiscating his legal materials when he first arrived at SCI-Smithfield[8] (*doc. 116* at 5 (citing *doc. 128* at 59 (dep. 20))); and two inmate requests he sent to Fisher, concerning (1) his continued placement in the RHU (*doc. 116* at 5 (citing *doc. 128* at 50)), and (2) a legal exemption so that Booze could keep an additional box of legal materials in his cell (*doc. 116* at 5 (citing *doc. 128* at 4)).

---

[8] Booze arrived at SCI-Smithfield on April 7, 2011.

With respect to the second element, Booze claims that after he engaged in such protected activity on April 21, 2011, he was subjected to the following adverse actions: his request for a legal exemption was denied; his legal box was confiscated by Irvin; he was transferred to another prison without his legal box; his red and black Nike sneakers were confiscated; he lost all of his administrative custody privileges; and he was confined in disciplinary custody in the RHU. *Doc. 116* at 5-6.

Finally, with respect to the third element, Booze claims that there was a causal connection between the constitutionally protected activities he engaged in (i.e., the filing of the grievance and inmate requests) and the various adverse actions taken by the Defendants. *Doc. 116* at 6. In support, he alleges that the record establishes a sufficient temporal proximity between the grievance he filed against Allison on April 21, 2011,[9] and all of the alleged adverse actions that were subsequently taken by the Defendants. *See id.*

In response to these claims, Irvin has raised two arguments. First, he argues that Booze has not established the third element of his retaliation claim (i.e., that there was a causal connection between the constitutionally protected activity

---

[9] Although Booze claims under the first element of his retaliation claim that he engaged in constitutionally protected activity by filing both a grievance and two inmate requests, he only focuses on the grievance when discussing the third element of his claim. *Compare doc. 116* at 5 (discussing his grievance and inmate requests) *with id.* at 6 (discussing only his grievance). We do the same.

Booze engaged in and the adverse action that Irvin allegedly took by confiscating Booze's box). *See doc. 111* at 8-9. Second, Irvin argues that, even assuming Booze could establish all three elements, including the third element, the record confirms that Irvin would have taken the same action regardless of whether Booze engaged in such constitutionally protected activity. *See id.* at 10. We address each argument in turn.

The undisputed facts establish that: on June 25, 2011, Irvin, who was a Corrections Officer Trainee at the time, was directed to retrieve Booze's box of legal materials; Irvin issued Booze a confiscation slip for the box; and ultimately, Irvin confiscated the box. Irvin, in moving for summary judgment, argues that, at the time he confiscated Booze's box, he had no knowledge of Booze's alleged constitutionally protected activities. In support, he offers a declaration, wherein he declares under the penalty of perjury that he "was not aware of any grievances or complaints by Booze when [he] issued the property confiscation slip on June 25, 2011[, and further that he] was not aware of any grievances or complaints after that date until [he] was notified about this lawsuit." *Doc. 112-5* at 2, ¶ 10.

In response, Booze has submitted his own declaration that Irvin "was in fact aware because [he] complained to [Irvin] about how much [he] need[ed] [his] legal materials." *Doc. 121* at 2, ¶ 15. In support of this particular declaration, Booze relies exclusively on allegations in his amended complaint. *See doc. 121* at ¶¶ 15-

16 (citing *doc. 55* at ¶¶ 51-53). These allegations, which are not evidence, do not support his claim that Irvin was aware, at the time he confiscated Booze's box, that Booze had filed a grievance against Allison on April 21, 2011. *See doc. 55* at ¶¶ 51-53. Aside from this unsubstantiated declaration, Booze has failed to offer any evidence, or at least point to any evidence, which demonstrates a genuine issue as to whether Irvin confiscated Booze's box as a result of Booze engaging in constitutionally protected activity.

Even assuming that Irvin was aware of Booze's grievance or inmate requests, we find Irvin's alternative argument, that he would have taken the same actions even if Booze had never engaged in such constitutionally protected activity, persuasive. Irvin has produced DC-ADM 815, for the proposition that personal property, which exceeds allowable limits, is considered contraband. *See doc. 112-3* at 39, ¶ t. Irvin has also produced his declaration, wherein he declares that Booze's box was deemed excess legal materials, and for that reason, he issued Booze a confiscation slip for the box and transferred it to the property intake area pending review of a request to maintain excess legal materials. *Doc. 112-5* at 2, ¶¶ 5-7.

Booze, however, has not offered any evidence that refutes the accuracy of the Department's policy or the declaration that has been offered by Irvin. Although Booze contends that his box "was not excess," and that he "never had

more than (4) boxes in Smithfield[,]" (*doc. 117* at ¶ 51), we find this contention to be unpersuasive based on the facts of this case. The undisputed record shows that, during the relevant time period, Booze was not confined in general population at SCI-Smithfield; he was instead confined in administrative custody in the RHU. In light of these facts, the Defendants have alleged, in their statement of material facts, that the amount of property permitted for inmates in general population is different than the amount of property permitted for inmates in the RHU. *See doc. 112* at ¶ 12 (citing *doc. 112-3* at 3, ¶ 10). And, in support of their allegation, they have offered evidence that inmates in general population are permitted to retain four records center boxes of property, while inmates in administrative custody are only permitted to retain the equivalent of one records center box of property. *Compare doc. 112-3* at 36 *with id.* at 55; *see also doc. 112-3* at ¶¶ 4-9. Booze, however, has not refuted this evidence.

Thus, Booze has not met the third element of his retaliation claim, and even assuming he has, Booze has failed to rebut Irvin's proffered evidence that he confiscated Booze's box of additional legal materials in accordance with Department policy, because inmates are not permitted to maintain excess personal property unless they have been granted an exception to do so. Accordingly, Workinger should be granted summary judgment on Booze's First Amendment retaliation claim.

## b. § 1983 Conspiracy Claim.

"[C]onspiracy under § 1983 is not an independent cause of action, but a means to impute liability on third persons." *Ober v. Miller*, No. 1:04-CV-1669, 2007 WL 4443256, at *18 (M.D. Pa. Dec. 18, 2007). "[A] §1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011).

"The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989). "To demonstrate the existence of a conspiracy under § 1983 [or *Bivens*], 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir.1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392 (3d Cir. 2003)). "It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Perez v. Gamez*, 1:13-CV-1552, 2013 WL 6073877, at *9 (M.D. Pa. Nov. 18, 2013). Rather, the plaintiff must show that the defendants acted in concert with the specific intent to violate the plaintiff's rights. *Davis v. Fox*, 3:12-CV-1660, 2013 WL 5656125, at * 5 (M.D. Pa. Oct. 15, 2013). Because direct evidence of a conspiracy is rarely available, the existence of a

conspiracy may be inferred from the circumstances. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009).

Here, we conclude that Booze has failed to establish a § 1983 claim for two reasons. First, considering that "a §1983 conspiracy claim only arises when there has been an actual deprivation of a right" (*Perano*, 423 F. App'x at 239), and further considering that Booze has not established a deprivation of his First Amendment right, we conclude that Booze has not established a § 1983 conspiracy claim. Second, although Booze has concluded that the Defendants conspired with one another to violate his constitutional rights, he has not offered any evidence, which shows that an agreement or plan was formulated and executed by the Defendants to achieve such a conspiracy. Booze, however, simply cannot rely on an unsubstantiated conclusion of conspiracy. In order to successfully refute the Defendants' motion for summary judgment, he must provide specific evidence establishing that the Defendants agreed among themselves to act against him in order to deprive him of a constitutional right under color of state law. Without such evidence, Booze's conspiracy claim amounts to nothing more than bare speculation.

Thus, we conclude that Booze has failed to establish a genuine issue of material fact regarding whether Irvin, or any of the other Defendants, entered into an illegal conspiracy, which caused Booze to suffer a cognizable injury.

Accordingly, Irvin should be granted summary judgment on Booze's § 1983 conspiracy claim.

### B. Booze's State Law Claims.

#### 1. Official Oppression and Criminal Coercion.

Booze claims that Irvin violated two Pennsylvania criminal statutes: 18 PA. CONS. STAT. § 2906(a) (criminal coercion); and 18 PA. CONS. STAT. § 5301 (official oppression). Irvin, in moving for summary judgment, argues that the alleged violations of these criminal statutes are not actionable under § 1983. We agree.

Booze's claims for criminal coercion and official oppression fail as a matter of law since criminal statutes do not generally give rise to civil liability. *Brett v. Brett*, 503 F. App'x 130, 132 (3d Cir. 2012); *Concert v. Luzerne Cty. Children & Youth Servs.*, No. 3:CV-08-1340, 2008 WL 4753709, at *3 (M.D. Pa. Oct. 29, 2008). Moreover, the specific criminal statutes cited by Booze provide for neither a private cause of action, nor a basis for civil liability. *See D'Errico v. DeFazio*, 763 A.2d 424, 429–30 (Pa. Super. Ct. 2000) (declining to find an implied private right of action in § 5301, the official oppression statute), *appeal denied*, 782 A.2d 546 (Pa. 2001); *see also Mathias v. Kershaw*, No. 1:09-CV-1515, 2010 WL 1329067, at *4 (M.D. Pa. Mar. 29, 2010) (concluding that § 5301 "does not provide a private cause of action for citizens allegedly victim to the violating

conduct."); *Simpson v. City of Coatesville*, No. 12-4803, 2015 WL 7251546, at *5-6 (E.D. Pa. Nov. 17, 2015) (declining to find a private cause of action for § 2906(a), the criminal coercion statute). Accordingly, Irvin should also be granted summary judgment on these claims.

### 2. Willful Misconduct.

Booze claims that Irvin's actions constituted "willful misconduct" in contravention of Pennsylvania law. Irvin argues, however, that this claim is barred by sovereign immunity. *Doc. 111* at 11-12. We need not reach this issue of sovereign immunity, however, to determine that this claim fails as a matter of law.

"Willful misconduct" is not recognized as a cause of action under Pennsylvania law. *See Johnston v. Dauphin Borough*, No. 1:05–CV–1518, 2006 WL 1410766 *7 (M.D. Pa. May 22, 2006) ("*Johnston*") (dismissing the plaintiff's state law claim for willful misconduct, and concluding that such a claim "is not an independent cause of action[,]" in Pennsylvania); *Jackson v. Davis*, No. 2:13-CV-1717, 2014 WL 3420462, at *21 (W.D. Pa. July 14, 2014) (finding that, to the extent the plaintiff was attempting to assert a separate cause of action under Pennsylvania law, based on the Defendants' alleged "willful misconduct," such a claim "must be dismissed inasmuch as 'wilfull misconduct' is not a recognized cause of action under Pennsylvania law.") (citing *Johnston*); *Thomas R. v. Northeastern Educ. Intermediate Unit 19*, No. 3:06-CV-1902, 2008 WL 314373, at

*3 (M.D. Pa. Feb. 1, 2008) (explaining that "willful misconduct itself is not a cause of action."). Thus, Irvin should also be granted summary judgment on Booze's allegations of "willful misconduct."

### 3. Negligence.

The Defendants contend that Booze's negligence claim against Irvin has no merit. *See doc. 111* at 12-13. We agree. Although Booze has loosely claimed "negligence" (*see doc. 55* at 21, ¶ 99), he has whole-heartedly failed to articulate any facts upon which such negligence is based. Given this failure, there is not a sufficient factual basis for the jury to infer negligence, and for that reason, this claim should not be permitted to proceed to trial. Irvin, therefore, should also be granted summary judgment on this claim.

### C. Conclusion.

Having thoroughly reviewed the instant motion, we conclude that the remaining Defendants in this action, namely, Workinger, Fisher, and Irvin, are entitled to summary judgment on all of Booze's surviving federal and state law claims. With respect to Workinger and Fisher, we conclude that Booze has not properly exhausted his available administrative remedies. With respect to Irvin, we conclude that Booze has not established a genuine issue of material fact as to either (a) his federal claims of retaliation and conspiracy, or (b) his state law claims of

willful misconduct, official oppression, criminal coercion, and negligence. Thus, we recommend granting the Defendants' motion in its entirety.

## V. Recommendations.

For all of the foregoing reasons, **IT IS RECOMMENDED** that the Defendants' motion (*doc. 108*) for summary judgment be **GRANTED.**

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **25th** day of **May, 2017**.

**S/ Susan E. Schwab**
Susan E. Schwab
United States Chief Magistrate Judge